UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BROWN,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>   Defendant. | Case No. CV 07-6672 PJW<br><br>MEMORANDUM OPINION AND ORDER |

  Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence, the decision is reversed and the case is remanded.

  Plaintiff applied for DIB and SSI in April 2005. (Administrative Record ("AR") 45-49, 185-89.) The Agency denied the applications and Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 28-40.) Plaintiff appeared with counsel at the hearing on November 29, 2006. (AR 194-217.) On January 26, 2007,

the ALJ issued an opinion denying the applications. (AR 11-20.) After the Appeals Council denied Plaintiff's request for review, (AR 6-9), Plaintiff commenced this action. Plaintiff claims that the ALJ erred when she: 1) failed to properly evaluate the treating doctor's opinion; 2) found that Plaintiff was not credible; and 3) concluded that Plaintiff could work. (Joint Stip. at 16-18.) For the following reasons, the Court finds that the ALJ erred and remand is warranted.

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Sinha, who had been treating her since 1987. Plaintiff takes exception to the ALJ's decision to disregard an October 18, 2006 letter in which Dr. Sinha explained that Plaintiff had been diagnosed with rheumatoid arthritis in 1998, and that she had experienced "worsening of pain over back, neck, shoulders and knees along with morning stiffness of fingers lasting for 2 hours: all consistent with poorly controlled Rheumatoid arthritis (RA)."[1] (AR 175.) Dr. Sinha noted that Plaintiff's finger joint deformity and arthritis in her knees required her to use a cane, and that she had been referred to a rheumatologist for "more aggressive treatment." (AR 175.) Dr. Sinha concluded that Plaintiff's arthritis "seems to have significant effect on her activity [sic] of daily living," and that Plaintiff was unable to perform full-time work. (AR 175.)

The ALJ discounted this opinion. She found that there was no "conclusive objective evidence in the treatment record . . . such as positive rheumatoid factor findings, abnormal ANA findings, abnormal

---

[1] Dr. Sinha also mentioned in his letter that Plaintiff had been diagnosed with hypertension, diabetes, and obesity. (AR 175.) Plaintiff, however, has not challenged the ALJ's findings with respect to these conditions.

joint fluid testing, rheumatoid nodules, and abnormal radiographic evidence of significant joint related abnormalities" to support the diagnosis.  (AR 18.)  She also noted that there was no evidence that Plaintiff had seen a rheumatologist and that Plaintiff failed to appear for a scheduled consultative examination with a rheumatologist.  (AR 18.)

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence.  Social Security Ruling ("SSR") 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632.  A treating doctor's opinion regarding the ultimate issue of disability, however, is not entitled to any special weight.  *See Batson v. Comm'r of Social Security*, 359 F.3d 1190, 1195 (9th Cir. 2004); 20 C.F.R. § 404.1527(e)(3).

There is no evidence in this record--never mind clear and convincing evidence--to support the ALJ's finding that Plaintiff did not suffer from rheumatoid arthritis.  In fact, all of the medical evidence supports the conclusion that she does.  The medical evidence, though minimal, is not contradicted.  There are less than 100 pages of treatment and lab records from Dr. Sinha's clinic in Watts, where Plaintiff was treated for a number of years.  (AR 90-130, 140-174.)  There is a July 26, 2005 "fill-in-the box" form filled out by a

reviewing doctor, Vickie Height.  (AR 131.)  And there is an October 18, 2006 letter from Dr. Sinha, setting forth his opinion that Plaintiff suffers from rheumatoid arthritis.  (AR 175.)

The records from Watts establish that Dr. Sinha had diagnosed Plaintiff with rheumatoid arthritis some time prior to 2004.  (AR 124.)  Dr. Height reviewed Dr. Sinha's records in October 2005 and agreed with Dr. Sinha's findings.  (AR 137-38.)  She concluded that Plaintiff's symptoms were attributable to a medically determinable impairment.  (AR 137.)  She found Plaintiff's statements partially credible.  (AR 137.)  She also noted that Plaintiff had pain in both knees, which was consistent with arthritis.  (AR 137.)  She concluded that Dr. Sinha's findings were not "significantly different" than her own.  (AR 138.)  Dr. Sinha's October 2006 letter confirms his earlier diagnosis of rheumatoid arthritis.  (AR 175.)  There is no other medical evidence in the record by which the ALJ could have concluded that Plaintiff did not have rheumatoid arthritis.

The ALJ, however, did just that.  She determined that Dr. Sinha's opinion was not entitled to deference because there were no objective findings supporting his diagnosis.  For example, she found that there were no "positive rheumatoid factor findings".  (AR 18.)  However, nowhere in the medical record does any doctor define what this term means or suggest that a lack of positive findings calls into question the diagnosis.  Nor does the ALJ state why she concludes that such a finding is necessary.  (AR 18.)  The same holds true for the ALJ's conclusion regarding the absence of "ANA findings".  (AR 18.)  "ANA" is not defined anywhere in the decision or in the record.  Nor is there any explanation as to why ANA findings are critical to a diagnosis of rheumatoid arthritis.  The Court has no knowledge of what

4

ANA stands for or how it is used by doctors in diagnosing rheumatoid arthritis.  Further, even if it did, it could not apply that understanding to the facts of this case.  Nor was the ALJ at liberty to do so.  *See*, *e.g.*, *Donathan v. Astrue,* 2008 WL 134119, at *3 (9th Cir. Jan. 14, 2008)(Graber, J., dissenting) (criticizing ALJ for consulting American College of Rheumatology guidelines and determining that, based on guidelines, treating doctor's opinion was not supported by sufficient objective evidence); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding social security administration hearing examiner "should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition").  Even assuming that the ALJ was right, and that there is support in the medical literature for requiring such objective tests, the ALJ cannot make this finding on her own.  She has to have a medical expert state that these findings are required for a diagnosis.  Absent testimony from a doctor that these findings were necessary, the ALJ could not conclude that they were.

Dr. Height's opinion calls into question the ALJ's other bases for rejecting Dr. Sinha's opinion.  The ALJ noted that Plaintiff had not gone to a specialist to have her rheumatoid arthritis treated.  Yet, Dr. Height did not raise this as a sign that Plaintiff was exaggerating her condition.[2]  (AR 132-39.)

The ALJ also found that Plaintiff's failure to attend a consultative examination called into question Dr. Sinha's finding that

---

[2] Curiously, the ALJ never mentioned Dr. Height's findings in her decision.

5

Plaintiff suffered from rheumatoid arthritis. (AR 18.) Though a claimant's failure to attend a consultative examination can support a finding that the claimant is not disabled, that inference is only proper where the claimant does not have a "good reason" for not attending. 20 C.F.R. § 416.918(a) (2008). The ALJ made no findings regarding Plaintiff's reasons for failing to attend the examination. Absent such findings, she was not authorized to reach an adverse inference based on Plaintiff's failure to attend. *Id.*

In short, it appears that the ALJ impermissibly made her own medical determination that Plaintiff did not suffer from rheumatoid arthritis, contrary to the conclusion of Plaintiff's treating doctor and the state agency reviewing doctor that she did. This was improper under the law governing social security cases and, as a result, remand is warranted on this issue.

In her second claim of error, Plaintiff argues that the ALJ improperly discounted her testimony about her pain and other limitations. (Joint Stip. at 11-14.) For the following reasons, the Court finds that the ALJ did not err.

An ALJ must undertake a two-step analysis when considering a claimant's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). She must first decide whether the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged. *Id.* If the claimant has met this threshold and there is no evidence of malingering, then the ALJ can only reject the claimant's pain testimony by providing specific, clear, and convincing reasons for doing so. *Id.* In evaluating Plaintiff's credibility, an ALJ is free

to consider many factors, including "ordinary techniques of credibility evaluation[,]. . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, . . . and the claimant's daily activities." *Id.*

Plaintiff testified that she suffered from arthritic pain in her hands, back, knees, shoulders, and wrists that has been worsening since 2001. (AR 201.) She explained that she took Methotrexate and Prednisone to ease the pain, but that these medications did not eliminate it completely. (AR 203.) According to Plaintiff, she suffered from morning stiffness, which she treated by soaking her hands in warm water or using a heating pad. (AR 203.) She also testified that she had had injections in her knees, shoulder, and back, which helped a little. (AR 203.) Plaintiff claimed that she could only stand for ten minutes, sit for 20 minutes, and walk a-block-and-a-half and only with the help of a cane. (AR 205-06.)

The ALJ found that Plaintiff suffered from osteoarthritis and diabetes. (AR 16.) She did not find that Plaintiff was a malingerer. Thus, in order to reject Plaintiff's testimony, the ALJ needed to provide specific, clear, and convincing reasons for doing so. *Tommasetti*, 533 F.3d at 1039.

The ALJ determined that Plaintiff's testimony was not credible because: (1) Plaintiff received only conservative treatment for her pain and stiffness, having only recently been referred to a rheumatologist; (2) Plaintiff had not worked much in her lifetime; (3) there was no indication that Plaintiff's treatment and medications had been ineffective in controlling her symptoms or that they had caused significant side effects; and (4) the record did not contain objective findings supporting her claimed limitations. (AR 19.)

The ALJ's finding that Plaintiff had received only conservative treatment for her rheumatoid arthritis is supported by the record. Plaintiff appears to have been treated by her general practitioner for years for her condition and had not been referred to a specialist until two weeks before the administrative hearing. This was a valid reason to question Plaintiff's allegations of pain and limitations. *See Tommasetti*, 533 F. 3d at 1039-40. If, as Plaintiff alleges, she had been suffering from debilitating pain for many years, common sense dictates that she would have pursued other avenues to relieve it, such as going to a specialist to find out if there was something more that could be done to alleviate her pain. Her failure to do so suggests that the pain was not as intense as she claims that it was, and the ALJ rightly relied on this fact in assessing her credibility.

The ALJ also relied on Plaintiff's poor work history to conclude that she was not being honest. (AR 19.) This, too, is a valid reason for questioning a claimant's credibility, *see Smolen*, 80 F.3d at 1284 (citing SSR 88-13), and it is supported by the record. (AR 61, 66-71, 199-201.)

Next, the ALJ found that Plaintiff's medication controlled her condition and did not cause side effects. (AR 19.) The fact that a claimant's medical condition can be controlled with medication that does not cause side effects can be considered by the ALJ in determining whether a claimant is credible. *See* SSR 96-7p. There is evidence in this record that Plaintiff's medication controls her pain and does not cause side effects, other than weight gain. (AR 83, 208.) Thus, the ALJ's reliance on this reason for rejecting Plaintiff's testimony was proper.

Finally, the ALJ cited a lack of objective medical findings for rejecting Plaintiff's testimony. (AR 19.) Lack of objective support for a claimant's allegations of pain, when combined with other reasons for finding a claimant incredible, can support an ALJ's credibility finding. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Though, as the Court has explained above, it questions the ALJ's conclusion that the objective medical evidence did not support the treating doctor's opinion that Plaintiff had rheumatoid arthritis, the analysis here is slightly different. There is very little objective medical evidence supporting Plaintiff's claim that she was incapable of working as a result of her condition. Where, as here, the evidence is susceptible to more than one rational interpretation, the Court is bound to uphold the ALJ's finding. *Id.* at 680-81. Further, even if the Court were to conclude that this was not a valid reason for questioning Plaintiff's credibility, the ALJ cited three valid reasons for doing so, and that is enough to support her finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that error in credibility determination is harmless when such error does not negate the validity of the ALJ's ultimate credibility conclusion). Thus, in the end, regardless of the Court's finding regarding the objective medical findings, the ALJ's credibility determination is supported by the record and the law and it is affirmed.

In her third and final claim of error, Plaintiff argues that the ALJ erred when she concluded that Plaintiff could perform her past work as a medical assistant or alternative work as a cashier or office helper. Plaintiff argues that the ALJ's finding regarding the past work was inconsistent with the vocational expert's testimony and that

her finding as to alternative work was not supported by the medical evidence. (Joint Stip. at 16-17.)

The Agency seems to tacitly concede that, based on the state of the record, the ALJ erred when she determined that Plaintiff could perform her past job, since the vocational expert testified that she would not be able to do so. The Agency argues, however, that the transcriber incorrectly transcribed the vocational expert's testimony at the administrative hearing and, in fact, the vocational expert had testified that Plaintiff could perform her past work. (Joint Stip. at 18.) As to the alternative jobs, the Agency argues that the record supports the ALJ's finding that Plaintiff had the residual functional capacity to perform these jobs.

The Court concludes that this issue, too, should be remanded for further consideration. On remand, the ALJ will be required to re-address the treating doctor's opinion, and the reviewing doctor's opinion. She may also want to order Plaintiff to attend a consultative examination and/or have a medical expert testify at the hearing. When all of that is completed, the ALJ should reassess Plaintiff's residual functional capacity and determine whether additional testimony from a vocational expert is necessary. If she elects not to call a vocational expert, however, she is bound by the vocational expert's testimony that Plaintiff cannot perform her prior job. (AR 212.)

       For all these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

       IT IS SO ORDERED.

       DATED:    February   26  , 2009.

                                        /s/ Patrick J. Walsh
                                        _____
                                        PATRICK J. WALSH
                                        UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BROWN, P 6672\Memo_Opinion.wpd